UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,　　　　　　　No. 13-cr-183 (JRT/LIB)

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

Gregory Joseph Jaunich,

　　　　　　Defendant.

---

　　　　This matter came before the undersigned United States Magistrate Judge upon the parties' pretrial motions. This case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on November 27, 2013, regarding the parties' pretrial discovery motions,[1] Defendant's Motion to Dismiss the Indictment, [Docket No. 30], and Defendant's Motion to Suppress Statements, [Docket No. 31]. For reasons discussed below, the Court recommends that Defendant's Motion to Dismiss the Indictment, [Docket No. 30], be **DENIED,** and Defendant's Motion to Suppress Statements, [Docket No. 31], be **DENIED**.

**I.　　BACKGROUND**

　　　　Gregory Joseph Jaunich ("Defendant") was indicted on July 16, 2013. (Indictment [Docket No. 1]). Defendant is charged with five counts of mail fraud, in violation of Title 18 United States Code Section 1341. (Id. at 3-5).

　　　　The Court held a motion hearing on November 27, 2013, at which time the Court denied Defendant's request for an evidentiary hearing regarding his Motion to Dismiss the Indictment,

---

[1] The Court addressed the parties' discovery motions in a separate Order, [Docket No. 55].

[Docket No. 30], and Motion to Suppress Statements, [Docket No. 31], for reasons stated on the record and reasons discussed in Section II, infra. (Minute Entry [Docket No. 51]). The Court allowed the parties the opportunity to submit additional briefing; Defendant's post-hearing briefing was due on December 6, 2013, and the Government's briefing was due on December 13, 2013. (Id.) Neither party offered post-hearing briefing. (Def.'s Notice to the Court [Docket No. 52]; Gov't's Letter to Magistrate Judge [Docket No. 53]). The matter was therefore taken under advisement on December 13, 2013.

Defendant is presently scheduled to appear for trial before the Honorable John R. Tunheim on February 18, 2014. (Order [Docket No. 50]).

## II. DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING

At the motion hearing, the Court denied Defendant's request for an evidentiary hearing. The Court supplements the reasons it gave on the record with those discussed below.

First, despite his contentions, Defendant is not automatically entitled to an evidentiary hearing. See United States v. Peterson, 652 F.3d 979, 982 (8th Cir. 2011) (affirming denial of evidentiary hearing where defendant failed to offer sufficient credible evidence in support of her motion to dismiss); United States v. Fazio, 487 F.3d 646, 654-55 (8th Cir. 2007) (affirming denial of evidentiary hearing where defendant's allegations on motion to dismiss were too speculative); United States v. Anderson, No. 01-cr-33 (ADM/ESS), 2004 WL 595171 (D. Minn. Mar. 23, 2004) (denying the defendant's request for an evidentiary hearing because he failed to allege disputed facts which, if proven, would entitle him to relief). "An evidentiary hearing on a motion need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of fact exist." United

States v. McMullin, 511 F. Supp. 2d 970, 974 (N.D. Iowa 2007) (citing United States v. Mims, 812 F.2d 1068, 1073-74 (8th Cir. 1987) (holding that "[w]hen a motion to suppress is filed, '[e]videntiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required.'") (internal citations and quotations omitted)).

Particularly regarding motions to dismiss based on double jeopardy claims, defendants bear the burden of first establishing a non-frivolous prima facie claim before courts consider granting requests for evidentiary hearings. "If a prima facie showing is made, a separate evidentiary hearing may be required." United States v. Hively, 437 F.3d 752, 762 (8th Cir. 2006). Only after a defendant makes a sufficient factual showing to demonstrate a prima facie case of double jeopardy may he be allowed an evidentiary hearing. In the present case, by his motion papers, Defendant only proffers statements made by the prosecuting Assistant United States Attorney at the sentencing hearing in his previous case, United States v. Jaunich, 07-cr-328 (PAM/JSM) (D. Minn. 2008), as evidence indicating double jeopardy. However, in addition to the fact that these statements are already contained in the record before the Court and themselves require no further production of evidence, this factual proffer is insufficient to warrant a further evidentiary hearing, for reasons discussed in Section III.C, infra.

Defendant has failed to proffer sufficiently clear, definite facts to even demonstrate a need for an evidentiary hearing. In his briefing and at the motion hearing, Defendant informed the Court that he intended to call his former attorney, John Hopeman, potentially offer testimony himself, and potentially call his wife to testify at the requested evidentiary hearing. However, Defendant failed to proffer sufficient grounds for the testimony, and failed by his proffer to

3

demonstrate disputed facts which, if allowed to explore at the evidentiary hearing, would further support his Motion to Dismiss or Motion to Suppress Statements.

Nothing in Defendant's briefing, oral argument, or other submissions to the Court indicates that a factual dispute exists that bears on the resolution of his Motion to Dismiss or Motion to Suppress Statements. Rather, the Court may resolve Defendants' motions without the introduction of additional facts, namely, by reference to the plea agreement itself and other documents already contained in the record.

Defendant's motion papers suggest the following "facts" support an evidentiary hearing:

- Jaunich entered into a plea agreement resolving all matters with the Government.
- AUSA John Marti, speaking on behalf of the Government, represented that Jaunich should be punished for <u>all</u> business dealings, including matters outside the record, including all conduct alleged in the second indictment.
- The Government agreed, explicitly and implicitly, to drop all other charges it brought against Jaunich and forego the charges it could have brought against him in regards to the way he conducted his businesses.
- All conduct alleged in the second indictment occurred before Jaunich entered into the plea agreement and is thereby encompassed within it.

(Def.'s Supp. Mem. [Docket No. 47], at 3-4). However, these "facts" identified by Defendant in his supplemental briefing as "at issue" and requiring further exploration via an evidentiary hearing are, in fact, not "facts" but are merely legal conclusions not requiring additional evidentiary exploration beyond the documents already contained in the record for the Court's consideration.

Not only is Defendant not <u>entitled</u> to an evidentiary hearing as a matter of due process,[2] but Defendant's limited proffer to the Court gives no indication as to the substance of Hopeman's, Defendant's, or Defendant's wife's testimony, or how such testimony would create a fact dispute the resolution of which could contribute to and/or advance Defendant's motions.

---

[2] In fact, Defendant cites no case law in support of this proposition, save a generic citation to the Fifth Amendment.

4

To the contrary, each of the grounds Defendant raises in support of his dismissal motion may be evaluated without the need for additional testimony.

Because Defendant did not specifically proffer or indicate in his motion papers or oral argument what additional putative facts he believes he would have proven if an evidentiary hearing had been held, the Court reaffirms its denial of Defendant's request for an evidentiary hearing.

### III. DEFENDANT'S MOTION TO DISMISS [DOCKET NO. 30]

Defendant moves the Court for an order dismissing the indictment because (1) the present indictment is barred by a previous plea agreement in a separate case; (2) it violates the constitutional prohibition against double jeopardy; (3) it is in violation of the applicable statute of limitations; (4) it violates due process; and (5) "dismissing the indictment would be a proper exercise of the Court's supervisory powers over the administration of justice as well as a correct application of the doctrine of equitable estoppel." (Def.'s Mem. [Docket No. 32], at 1).

#### A. Facts

On September 18, 2007, in an entirely distinct and separate criminal action, Defendant was indicted on 33 counts of mail fraud, 3 counts of false statement on loan and credit applications, and 6 counts of money laundering, in connection with knowingly devising and attempting to devise a scheme and artifice to defraud and to obtain money and property from Xcel Energy and the State of Minnesota, by means of materially false and fraudulent pretenses, representations, and promises. United States v. Jaunich, No. 07-cr-328 (PAM/JSM) (D. Minn. 2008) ("Jaunich I") (Indictment [Docket No. 5], at 3). The underlying facts of Jaunich I involved Defendant's company, Northern Alternative Energy ("NAE"), and, specifically, NAE Shaokatan

Power Partners, LLC ("NAE-SPP"). (Id. at 1-2). The "scheme and artifice" concerned the power production agreement between NAE-SPP and Xcel Energy and energy production incentives between NAE-SPP and the State of Minnesota, between September 2003 and February 2005. (Id. at 2-4).

On July 1, 2008, Defendant entered into a plea agreement with the Government and subsequently entered a guilty plea in Jaunich I. The factual basis to which Defendant admitted in the Jaunich I plea agreement is as follows:

> During 2003 and 2004 Gregory Jaunich was the manager of Shaokatan Power Partners, a Minnesota LLC (SPP) which had a Power Purchase Agreement to sell wind energy power to Northern States Power [Xcel Energy].
>
> On September 25, 2003, Mr. Jaunich received from an SPP employee meter readings for power produced by the SPP wind turbines of 13,800 kilowatt hours and 6,200 kilowatt hours, respectively.
>
> On September 25, 2003, Mr. Jaunich instructed SPP employees to bill NSP for 1,843,667 kilowatt hours, which was an estimate.
>
> Mr. Jaunich provided this estimate to the employees knowing it was not based on actual production.
>
> Before November of 2004 Mr. Jaunich became aware that one of the two SPP turbines was on the ground and not producing power.
>
> During 2003 and 2004 Mr. Jaunich knew there was a high probability that the power SPP billed for had not in fact been produced, and despite his obligation to do so, he did not investigate to determine the true numbers.
>
> On November 4, 2004, Mr. Jaunich caused employees of SPP to mail an invoice to NSP billing NSP for 707,871 kilowatt hours. This billing was based on an estimate derived by Mr. Jaunich, not an actual meter reading.
>
> The total loss of NSP as a result is between $200,000 and $400,000.

All in violation of 18 U.S.C. § 1341.

(Dworak Aff. [Docket No. 33-1], Ex. A ¶ 2).

The plea agreement also included a paragraph entitled "Complete Agreement," which stated, "This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings." (Id. ¶ 9). At the change of plea hearing, the Court asked Defendant, "Now, aside from this plea agreement, has there been any force or threats or promises made apart from that agreement?" (Gov't Mem. [Docket No. 43-1], Attachment 1 at 13). Defendant responded, "No, Your Honor." (Id.)

Following Defendant's guilty plea in Jaunich I, five investors in Averill Wind, LLC, a separate wind farm project NAE began developing in 2005, initiated a civil suit against Defendant on December 24, 2008. The civil suit was dismissed with prejudice by stipulation of the parties in May 2011. (Dworak Aff. [Docket No. 33-2], Ex. Q Settlement Agreement and Release).

The indictment in the present case was filed on July 16, 2013, concerning Averill Wind, LLC and involving a "scheme" from October 2006 through at least June 30, 2008 executed to defraud Averill investors. (Indictment [Docket No. 1], at 1-2). The indictment charges Defendant with one count of mail fraud for each of the June 30, 2008, letters he sent by mail to five Averill investors, "containing false material representations concerning the progress of the Averill Project and enclosing a false financial statement." (Id. at 4-5).

**B.     The indictment does not violate Defendant's previous plea agreement.**

Despite Defendant's contentions to the contrary, the present indictment does not violate Defendant's Jaunich I plea agreement. Defendant essentially requests the Court grant him

7

absolution for any potential crimes committed prior to the date of his 2008 plea agreement, including entirely separate, independent actions.

"Plea agreements are contractual in nature and should be interpreted according to general contract principles. Due process may be violated if there is a breach of promise that induced a guilty plea." United States v. Sanchez, 508 F.3d 456, 460 (8th Cir. 2007) (internal citation omitted). The party asserting a breach of plea agreement bears the burden of proving that such a breach occurred. United States v. Leach, 562 F.3d 930, 935 (8th Cir. 2009) (citing United States v. Smith, 429 F.3d 620, 630 (6th Cir. 2005)).

Defendant has not and is ultimately unable to identify any breached terms of the Jaunich I plea agreement, which, as articulated in the facts section above, involves entirely separate underlying facts and actions from the present action. Defendant proffered no specific facts indicating that anything charged in the present indictment was the subject of the Jaunich I plea agreement.

Defendant is only able to point to his own subjective understanding of the plea agreement in support of his contention that the Government has breached the agreement, arguing, "Mr. Jaunich understood that the government had investigated all of his businesses and charged him with crimes for the way that he conducted those businesses." (Def.'s Mem. [Docket No. 32], at 22). However, Defendant's subjective understanding of the parameters of the plea agreement does not dictate its material terms:

> When an alleged oral promise is made prior to, or in conjunction with, a plea agreement, such promise cannot serve as an inducement to plead guilty when the defendant's "plea agreement and plea-hearing representations negate such a claim." United States v. Norris, 20 Fed. Appx. 582, 583 (8th Cir. 2001) (unpublished per curiam) (declining to address defendant's argument that he was induced into pleading guilty by the government's oral promise of a substantial assistance motion). This

8

> is because, "[a]bsent special circumstances, a defendant – quite as much as the government – is bound by a plea agreement that recites that it is a complete statement of the parties' commitments." United States v. Connolly, 51 F.3d 1, 3 (1st Cir. 1995). Thus, "[a]n integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." United States v. Hunt, 205 F.3d 931, 935 (6th Cir. 2000); see also United States v. Ahn, 231 F.3d 26, 36 (D.C. Cir. 2000) (stating that an integration clause, "[s]tanding alone," is "strong evidence that no **implied promises** existed – after all, integration clauses establish that the written plea bargain was adopted by the parties as a complete and exclusive statement of the terms of the agreement") (internal quotations and citation omitted).

Leach, 562 F.3d at 935-36 (emphasis added).

At the change of plea hearing in Jaunich I, Defendant agreed that the written plea agreement was the "complete agreement," and that aside from the plea agreement itself, the Government had made no other promises. (Gov't Mem. [Docket No. 43-1], Attachment 1 at 7). As a result, the language of the plea agreement itself controls, and Defendant cites no language or terms in the Jaunich I agreement in support of his argument that the present indictment violates such terms.

Even assuming the Government had been aware of the underlying facts of the present indictment involving Averill Wind, LLC at the time Defendant entered into the Jaunich I plea agreement, the 2008 plea agreement does not bar the Government from prosecuting the Defendant pursuant to the present indictment and its underlying facts. In United States v. Nguyen, 608 F.3d 368 (8th Cir. 2010), the Government did not breach the defendant's plea agreement in a Minnesota case when it subsequently prosecuted the defendant in Iowa for a separate conspiracy. The Eighth Circuit rejected the defendant's argument that the plea agreement contained an implied promise to sentence the defendant for all drug transactions known to the government at the time of the original plea agreement. Id. at 373. Rather, the court

held that "the government did not breach the Minnesota plea agreement, which was silent on the question of additional charges, when it prosecuted [the defendant] in Iowa for a separate conspiracy." Id. at 373-74.

Despite the fact Defendant claims to have subjectively "understood that the government had investigated all of his businesses and charged him with crimes for the way that he conducted those businesses," Defendant's subjective understanding of the plea agreement does not change the fact that the plain and clear language of the Jaunich I plea agreement does not dispose of the actions charged in the present indictment. (Def.'s Mem. [Docket No. 32], at 22).

Because Defendant is unable to identify any terms in the Jaunich I plea agreement breached by the present indictment, the Court recommends finding that the indictment does not violate the Jaunich I plea agreement.

### C. The indictment does not violate the Fifth Amendment's prohibition against double jeopardy.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." CONST. AMEND. V. On a motion to dismiss an indictment on double jeopardy grounds, the defendant bears the initial burden of demonstrating a non-frivolous prima facie case. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1360 (11th Cir. 1994).

Similar to the arguments advanced in support of his contention that the present indictment violates Defendant's Jaunich I plea agreement, Defendant argues that the Jaunich I indictment, plea agreement, and resulting sentence encompass the conduct resulting in the present indictment, rendering the present case in violation of the double jeopardy clause. In support of this argument, in his motion papers, Defendant merely cites to comments made by Assistant United States Attorney John Marti during the Jaunich I sentencing hearing:

> Your honor, Mr. Hopeman is an excellent attorney, and he has been able, I think, to posture this case to you in a way that presents Mr. Jaunich in the best light, but the Government has been involved in this investigation for a while and we have seen a different side of Mr. Jaunich and it's just not those facts which are reflected in the PSR. In our contacts with witnesses, with individuals who have done business with Mr. Jaunich, we have seen a side of him where he, as described to us, takes advantage of every business arrangement that he enters into to his own benefit and often using deceit with respect to the arrangements.

(Dworak Aff. [Docket No. 33-1], Ex. J at 9).

"Relevant conduct which has been considered in a prior sentence can be a basis for subsequent prosecution without violating the double jeopardy clause so long as the earlier sentence was within the statutory or legislatively authorized punishment range." United States v. Abboud, 273 F.3d 763, 766 (8th Cir. 2001) (citing Witte v. United States, 515 U.S. 389, 397, 406 (1995) ("[C]onsideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct . . . .")). Not only does Defendant fail to proffer facts indicating that consideration of relevant conduct pushed his Jaunich I sentence beyond the statutory or legislatively authorized punishment range, but Defendant has proffered no evidence that the underlying facts for the present indictment were even considered at sentencing in Jaunich I aside from AUSA Marti's non-specific reference to "every business arrangement."[3]

Because Defendant fails to establish a prima facie claim for double jeopardy, the Court recommends finding that the indictment does not violate the Fifth Amendment's prohibition against double jeopardy.

---

[3] Additionally, the "loss" contemplated in the Jaunich I plea agreement and the restitution ordered concerned losses experienced by Xcel Energy, not Averill investors, further indicating that the underlying facts for the present indictment were not consider at sentencing in Jaunich I.

### D. The indictment is not untimely.

Defendant next contends that the indictment violates 18 U.S.C. § 1341's five-year statute of limitations.

On June 7, 2013, Defendant signed an agreement with the Government to toll the statute of limitations related to his solicitation of investments in Averill Wind, LLC, and the subsequent use of those funds, for the period of June 6, 2013 through July 19, 2013. (Dworak Aff. [Docket No. 33-2], Ex. X). Defendant's letters to five Averill investors that the Government identifies as the basis for the five counts of mail fraud were sent on June 30, 2008. (Indictment [Docket No. 1]). The statute of limitations would have expired on June 30, 2013, but for the agreed-upon tolling period, thus rendering the indictment timely.

Defendant contends, however, that the acts for which the Government "truly seeks to punish Mr. Jaunich" took place between October 2006 and January 2007 – namely, the period during which the investors were making investments in Averill Wind, LLC – as opposed to the June 30, 2008 letters. The Defendant's argument is unpersuasive.

"Mailings occurring after receipt of the goods obtained by fraud are within the [mail fraud] statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.'" United States v. Lane, 474 U.S. 438, 451-52 (1986) (citing United States v. Maze, 414 U.S. 395, 403 (1974); see United States v. Sampson, 371 U.S. 75 (1962)). Whether the letters were designed to lull the victims into a "false sense of security" remains for the Government to prove at trial. In the meantime, the identified action serving as the basis for the Government's five counts of mail fraud are made timely by the tolling period agreed to by Defendant, thus saving the July 16, 2013, indictment.

Because the indictment was not untimely, pursuant to the tolling agreement, the Court recommends finding that the present indictment does not violate the applicable statue of limitations.

### E. Defendant has suffered no pre-indictment delay.

A prima facie case of pre-indictment delay requires Defendant demonstrate that (1) he has suffered actual, non-speculative prejudice from the delay, and (2) when weighed against the reasons for the delay, the delay offends "those fundamental conceptions of justice which lie at the base of our civil and political institutions" and "which define the community's sense of fair play and decency." United States v. Lovasco, 431 U.S. 783, 788-90 (1970).

"To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." United States v. Bartlett, 794 F.2d 1285, 1289 (8th Cir. 1986) (internal citations omitted).

> Speculative or conclusory claims alleging "possible" prejudice as a result of the passage of time are insufficient. The defendant also must relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense. Finally, the defendant must show that the missing testimony or information is not available through substitute sources. In sum, the defendant must demonstrate that the prejudice <u>actually</u> impaired his ability to meaningfully present a defense.

Id. at 1289-90 (internal citations omitted) (emphasis in original).

Defendant again fails in his motion papers to proffer or articulate any particular prejudice he has suffered because of the alleged delay in indicting. Instead, he merely generally alleges that "business records are missing and witness memories have faded." These proffers are simply speculative and conclusory, and Defendant fails to meet his burden of demonstrating prejudice as

a result of pre-indictment delay. Thus, the Court recommends finding that Defendant has suffered no pre-indictment delay.

### F.  The Court declines to exercise its "supervisory powers over the administration of justice"

Defendant has failed to cite to any cases from any jurisdiction upholding the dismissal of an indictment based on the court's supervisory powers or the doctrine of equitable estoppel. Because the Court finds no reason to dismiss the indictment, and because it declines to go beyond the confines of the law and the record here to do so, the Court recommends **DENYING** Defendant's Motion to Dismiss the Indictment, [Docket No. 30], for all the reasons set forth above.

## IV.  DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [DOCKET NO. 31]

Defendant generically moves the Court for an order suppressing "any and all statements the government claims are his together, with any derivative evidence, and he respectfully requests the Court conduct an evidentiary hearing on this motion." (Def.'s Mot. to Suppress Statements [Docket No. 31]).

In support of his motion, without referring to any specific statement, Defendant argues, "the Court should also suppress Mr. Jaunich's statements on the grounds that they too violate his plea agreement and suppression of them would be a proper exercise of the Court's supervisory powers over the administrate of justice as well as a correct application of the doctrine of equitable estoppel." (Def.'s Mem. [Docket No. 32], at 2).

The only grounds Defendant identifies for suppression are those previously advanced in support of his Motion to Dismiss the Indictment, namely, the Government's violation of the 2008 plea agreement. Thus, in light of the fact that the Court recommends denying Defendant's

Motion to Dismiss and generally refutes Defendant's arguments that the Government, by the present indictment, has violated Defendant's 2008 plea agreement or any other rights of Defendant, the Court recommends dismissing Defendant's Motion to Suppress Statements, [Docket No. 31].

Furthermore, and equally to the point, Defendant has failed to identify any specific statements he made while in the custody of law enforcement, which would be the subject of his suppression motion. Because Defendant has not identified any specific statements that he believes should be suppressed, and has proffered no factual or legal grounds for suppression beyond those advanced in support of his Motion to Dismiss, the Court further recommends denying Defendant's Motion to Suppress Statements, [Docket No. 31], solely on the basis that Defendant has failed to meet his initial burden of production. United States v. Jones, No. 09-cr-260 (DWF/RLE), 2009 U.S. Dist. LEXIS 112286, at *10 (D. Minn. Oct. 30, 2009) (Erickson, C.M.J.) (citing United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987); and United States v. Quiroz, 57 F. Supp. 2d 805, 822-23 (D. Minn. 1999) (Mason, M.J.), adopted by 57 F. Supp. 2d 805, 811 (D. Minn. 1999) (Kyle, J.)), adopted by 2009 U.S. Dist. LEXIS 112176 (D. Minn. Dec. 2, 2009) (Frank, J.). C.f., Section II, supra: "An evidentiary hearing on a motion need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of fact exist." United States v. McMullin, 511 F. Supp. 2d 970, 974 (N.D. Iowa 2007) (citing United States v. Mims, 812 F.2d 1068, 1073-74 (8th Cir. 1987) (holding that "[w]hen a motion to suppress is filed, '[e]videntiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to

the validity of the search are in question, an evidentiary hearing is required.'") (internal citations and quotations omitted)).

In his briefing, Defendant failed to identify any specific statements for review by the Court. However, at the November 27, 2013, motion hearing, Defense counsel, for the first time, identified Defendant's deposition statements, made in connection with a separate and independent civil action, as potentially warranting suppression.[4]

However, civil statements made while under oath during a deposition do not warrant a Miranda analysis.[5] Because Defendant has failed to identify any specific statements made while in the custody of law enforcement,[6] the Court concludes its inquiry and recommends **DENYING** Defendant's Motion to Suppress Statements, [Docket No. 31].

## V. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss the Indictment, [Docket No. 30], be **DENIED**.

---

[4] At the hearing, Defense counsel acknowledged that, in the absence of Government involvement in procuring these statements, the Court should rely on its "inherent authority" to suppress the statements, in light of Defendant's subjective belief that the 2008 plea agreement had resolved all criminal actions against him.

[5] "[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." Id. (internal quotation omitted).

[6] In its briefing, and at the November 27, 2013, motion hearing, the Government identifies that on May 16, 2013, FBI special agents interviewed Defendant at his home in North Oaks, Minnesota. However, no facts suggest that Defendant was in custody during this voluntary interview, and Defendant has not specifically challenged these statements as warranting suppression. The Government represents that the interview was entirely voluntary and non-custodial, and Defendant proffers no facts to the contrary.

2. Defendant's Motion to Suppress Statements, [Docket No. 31], be **DENIED**.

Dated: January 8, 2013                               s/Leo I. Brisbois
                                                     The Honorable Leo I. Brisbois
                                                     United States Magistrate Judge

# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 18, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by February 28, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.