# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 13-183 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| GREGORY JOSEPH JAUNICH, | |
| Defendant. | |

John E. Kokkinen and Kimberly A. Svendsen, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Andrew S. Birrell and Paul C. Dworak, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 3000, Minneapolis, MN 55402, for defendant.

A United States grand jury returned an indictment against Defendant Gregory J. Jaunich, charging him with five counts of mail fraud in violation of 18 U.S.C. § 1341. Jaunich brought a motion to dismiss the indictment and a motion to suppress statements arguing, primarily, that the current prosecution breaches the term of a plea agreement he entered into in a previous federal criminal prosecution and violates double jeopardy. At a November 27, 2013 proceeding on Jaunich's motions, United States Magistrate Judge Leo I. Brisbois denied Jaunich's request for an evidentiary hearing. On January 8, 2014, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court deny both motions. Jaunich filed timely objections arguing that the Magistrate

Judge erred in denying Jaunich's request for an evidentiary hearing. Because Jaunich failed to demonstrate that he was entitled to an evidentiary hearing, the Court will overrule his objections and adopt the R&R in its entirety.

## BACKGROUND

On July 16, 2013, Jaunich was charged with five counts of mail fraud in connection with an alleged scheme to defraud investors occurring between October 2006 and June 2008, in which Jaunich allegedly solicited funds from investors for the purposes of developing a wind energy project known as the Averill Project. (Indictment, July 16, 2013, Docket No. 1.) The indictment alleges that as part of the scheme Jaunich induced investments by making "false material representations" to investors concerning the status of the Averill Project and failed to disclose that at the time of solicitation he was under criminal investigation by federal law enforcement. (*Id.* ¶¶ 3-5.) Jaunich also allegedly fraudulently represented to investors that the funds they invested "would be used solely to develop, operate, and maintain the Averill Project," when in fact, it is alleged, Jaunich diverted most of the funds to his own personal use and prevented the discovery of this diversion by providing investors with false financial statements. (*Id.* ¶¶ 6-8.) The five counts of mail fraud arise out of five letters mailed to Averill Project investors on or about June 30, 2008, that contained the claimed misrepresentations and omissions described above. (*Id.* ¶ 11.)

# I.      PRIOR CRIMINAL PROCEEDINGS

Because Jaunich's motions to dismiss the indictment and suppress statements directly relate to Jaunich's previous criminal conviction for mail fraud, the Court recounts the nature of the earlier criminal proceedings to the extent necessary to rule on the present objections.

## A.      2007 Indictment

On September 18, 2007, an indictment alleging thirty-three counts of mail fraud, three counts of making false statements on loan and credit applications, and six counts of money laundering was filed against Jaunich in the District of Minnesota.  (Aff. of Paul C. Dworak, Ex. F ("2007 Indictment"), Oct. 23, 2013, Docket No. 33.)  The charges in the 2007 Indictment specifically arose out of Jaunich's formation and operation of the wind-power businesses Northern Alternative Energy ("NAE") and NAE Shaokatan Power Partners, LLC ("NAE-SPP").  (2007 Indictment ¶ 3.)  NAE-SPP entered into a wind generation purchase agreement with Xcel Energy and received renewable energy production incentives from the State of Minnesota.  (*Id.* ¶ 4.)  The 2007 Indictment alleged that Jaunich fraudulently obtained funds from Xcel Energy and the State of Minnesota by submitting invoices to those entities that overstated the amount of electricity generated by NAE-SPP.  (*Id.* ¶¶ 6-9.)

The mail fraud counts were based upon thirty-three letters sent by Jaunich between September 2003 and January 2005 related to NAE-SPP's purported wind-power production.  (*Id.* ¶ 10.)  The three counts for making false statements on loan and credit

applications were related to loans NAE-SPP had obtained from Anchor Bank after falsely representing that it owned the two wind turbine generators collateralizing the loan, misrepresenting the amount of electricity produced by NAE-SPP, and misrepresenting the purpose for which the loan proceeds would be used.  (*Id.* ¶¶ 13-14.)  Finally, the six money laundering charges alleged that Jaunich engaged in transactions with financial institutions involving criminally derived property with respect to the money obtained from the mail fraud and false loan applications.  (*Id.* ¶ 18.)

### B.    Guilty Plea

On July 1, 2008, Jaunich entered into a plea agreement, in which he pled guilty to one of the counts of mail fraud (Count 14) charged in the 2007 Indictment.  (Dworak Aff., Ex. A ("2008 Plea Agreement") ¶ 1.)  The United States agreed to "dismiss the remaining counts at time of sentencing."  (2008 Plea Agreement ¶ 1.)  The factual basis for Jaunich's guilty plea involved his work as manager of NAE-SPP, and Jaunich admitted that he caused false invoices to be mailed to Northern States Power ("NSP")[1] which billed NSP for more power than was produced by the NAE-SPP wind turbines. (*Id.* ¶ 2.)  The 2008 Plea Agreement also contained an integration clause stating "[t]his is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings."  (*Id.* ¶ 9.)

---

[1] NSP is now a subsidiary of Xcel Energy, and references in the 2008 Plea Agreement to NSP relate to the allegations regarding Xcel Energy in the 2007 Indictment.  (*See* Def.'s Mem. in Supp. of Mots. to Dismiss the Indictment and Suppress Statements at 9, Oct. 23, 2013, Docket No. 32.)

At the change of plea hearing, Jaunich confirmed that he agreed to plead guilty to Count 14 of the 2007 Indictment and that the United States would move to dismiss the remaining counts. (Government's Resp. to Def.'s Pretrial Mots., Ex. 1 at 2:21-25, Oct. 31, 2013, Docket No. 43.) Jaunich also agreed with the facts set forth in the 2008 Plea Agreement's factual basis. (*Id.*, Ex. 1 at 3:1-5.) With respect to the scope of the plea, Jaunich indicated that the 2008 Plea Agreement presented to the Court was "the complete agreement." (*Id.*, Ex. 1 at 7:1-3.) Jaunich responded "no" to the court's questions "aside from this plea agreement, have there been any other promises made as to what the Court would do at sentencing?" (*id.*, Ex. 1 at 8:15-18) and "aside from this plea agreement, has there been any force or threats or promises made apart from that agreement?" (*id.*, Ex. 1 at 13:1-4).

Based on the 2008 Plea Agreement, Jaunich was sentenced to twenty-one months in prison and three years of supervised release on November 6, 2008. (Dworak Aff., Ex. K.) Jaunich was also ordered to pay restitution to Xcel Energy in the amount of $355,000. (*Id.*, Ex. K at 5.) Jaunich served the entirety of his sentence, including his term of supervised release, prior to the filing of the present indictment.

## II.   PRETRIAL MOTIONS

On October 23, 2013, Jaunich filed a motion to dismiss the indictment (Mot. to Dismiss the Indictment, Oct. 23, 2013, Docket No. 30) and a motion to suppress "any and all statements the government claims are [Jaunich's] together, with any derivative evidence" (Mot. to Suppress Statements, Oct. 23, 2013, Docket No. 31). Jaunich argued

that dismissal of the indictment was warranted because the present indictment breaches the 2008 Plea Agreement, violates double jeopardy, violates the statute of limitations, and violates Jaunich's due process right to be free from preindictment delay.  (Def.'s Mem. in Supp. of Mots. to Dismiss the Indictment and Suppress Statements at 1, Oct. 23, 2013, Docket No. 32.)  Additionally, Jaunich argued that "dismissing the indictment would be a proper exercise of the Court's supervisory powers over the administration of justice as well as a correct application of the doctrine of equitable estoppel."  (*Id.* at 1-2.)  Jaunich sought suppression of any statements made by him on the ground that use of those statements would also violate the 2008 Plea Agreement and that suppression would be a proper exercise of the Court's supervisory powers.  (*Id.* at 2.)  In support of his motions Jaunich submitted a thirty-page brief and 250 pages of exhibits.  (*See* Def.'s Mem. in Supp. of Mots. to Dismiss the Indictment and Suppress Statements; Dworak Aff.)

Jaunich requested an evidentiary hearing with regard to both motions.  (Mot. to Dismiss the Indictment at 1; Mot. to Suppress Statements at 1.)  In support of this request, Jaunich stated only that "[i]n addition to the exhibits referenced in this memorandum of law, Mr. Jaunich is requesting an evidentiary hearing and will produce live witness testimony in support of his motion."  (Def.'s Mem. in Supp. of Mots. to Dismiss the Indictment and Suppress Statements at 2.)  In response, the United States argued that Jaunich had failed to show that an evidentiary hearing was warranted because he had not presented relevant facts that could entitle him to relief with respect to his motions.  (Government's Resp. to Def.'s Pretrial Mots. at 15, 22.)

## A.      Supplemental Briefing

At some point after the parties filed their briefs related to the pretrial motions, the United States learned that Jaunich intended to present testimony from his attorney in the previous criminal case, Jon Hopeman, at the evidentiary hearing.  The United States spoke with defense counsel and indicated to the defense that if Hopeman testified, Jaunich would have to waive "attorney-client privilege as to all communications related to the plea agreement in the prior case, including plea negotiations, and as to all communications related to the Averill project."   (Government's Resp. to Def.'s Objections at 3, Jan. 28, 2013, Docket No. 64.)  Shortly thereafter, counsel for Jaunich in the present case filed a letter to the Magistrate Judge indicating that at the hearing on his pretrial motions "we intend to call witnesses" and "[t]here will also be an issue for the Court to decide involving the nature and scope of an attorney-client privilege waiver and possibly a Fifth Amendment waiver.  We intend to file a memo tomorrow to assist the Court in the analysis of those issues." (Letter, Nov. 4, 2013, Docket No. 44; *see also* Letter, Nov. 5, 2013, Docket No. 46.)

On November 6, 2013, Jaunich filed a supplemental brief in support of his pretrial motions related to his request for an evidentiary hearing and a ruling on certain waiver issues.  (Def.'s Supplemental Mem. in Supp. of Mots. to Dismiss Indictment and Suppress Statements, Nov. 6, 2013, Docket No. 47.)  In the supplemental memo, Jaunich argued that he had met his burden of showing entitlement to an evidentiary hearing by identifying the following facts:

**Mr. Jaunich Entered Into a Plea Agreement Resolving All Matters with the Government.**

On July 1, 2008, Mr. Jaunich entered into a plea agreement to resolve all matters between the federal government and himself and the NAE-related entities.

Assistant United States Attorney John Marti, speaking on behalf of the government, responded at the sentencing hearing that Mr. Jaunich should be punished for **all** his business dealings, including matters outside the record which includes the conduct alleged in the second indictment (all which occurred before Mr. Jaunich pled guilty).

In exchange for his guilty plea, the government, explicitly and implicitly, agreed it would, among other things, drop the other charges it brought against Mr. Jaunich and forego the charges it could have brought against him in regards to the way he conducted his business. That was the deal.

All of the conduct alleged in the second indictment occurred before Mr. Jaunich entered into his plea agreement with the government on July 1, 2008, and is encompassed within it.

(*Id.* at 3-4 (alterations omitted) (emphasis in original) (citations omitted).)

Additionally, Jaunich argued that he could not provide more specific facts about the testimony he and Hopeman proposed to offer at the evidentiary hearing because doing so could waive his attorney-client privilege with respect to the proffered facts as well as issues related to them. (*Id.* at 4.) Jaunich also indicated that he was unwilling to provide the basis for his evidentiary hearing request because he was unaware of the extent to which any evidence presented in the pretrial evidentiary hearing could later be used by the United States at trial. (*Id.*) Therefore, Jaunich requested that prior to any evidentiary hearing the Magistrate Judge first determine whether any testimony by Jaunich and Hopeman would waive attorney-client privilege, and then

> [i]n the event the Court determines that calling attorney Hopeman and/or
> Mr. Jaunich would constitute an implied waiver of the protections afforded
> by the attorney-client privilege and/or the Fifth Amendment, Mr. Jaunich
> respectfully requests and hereby moves the Court for a protective order,
> defining the narrowest contours of such waiver and prohibiting the use of
> the information, and any derivative information, by the government, which
> among other things, would prohibit any use beyond this pretrial hearing,
> and would specifically forbid the use by the government at trial, or calling
> attorney Hopeman to testify at trial.

(*Id.* at 2-3.)  Specifically, Jaunich requested that the Magistrate Judge issue an order

limiting any waiver of attorney-client privilege "to [the] scope of the direct examination

of the witnesses, not require disclosure of any documents in the possession of

Mr. Jaunich's prior or present counsel, limit the waiver to the pretrial hearing, and

prohibit the use of any resulting information for any purpose other than to litigate the

issues in the motions." (*Id.* at 12-13.)

The United States also filed a supplemental brief in which they maintained that

Jaunich still had not identified any "disputed issues of fact that, if resolved in the

defendant's favor, would permit him to prevail on his motions." (Government's Resp. to

Def.'s Supplemental Mem. at 1, Nov. 8, 2013, Docket No. 49.)  The United States also

requested that if an evidentiary hearing was to be held, the Magistrate Judge provide the

United States with access to materials from Hopeman's file "related to the subject matter

of [Jaunich's] and Mr. Hopeman's expected testimony . . . to give the government a fair

opportunity to defend against defendant's claims." (*Id.* at 1-2.)  Finally, the United States

urged the Magistrate Judge to decline to decide any waiver issues "in the abstract" and

instead save those issues to be resolved "in the event that the government seeks to use the

testimony at trial, when the substance of the testimony and the circumstances of the government's use of the testimony are known to all involved." (*Id.* at 8.)

Additionally, on November 26, 2013, the day before the hearing on Jaunich's pretrial motions, defense counsel informed the United States that Jaunich's wife, Julie Jaunich, might also be called as a witness during the evidentiary hearing. (Government's Resp. to Def.'s Objections at 4; Tr. 9:4-12, Jan. 13, 2014, Docket No. 60.) Defense counsel indicated that Julie Jaunich's testimony would be offered to support Jaunich's argument that the indictment should be dismissed on the grounds of preindictment delay. (Government's Resp. to Def.'s Objections at 4; Tr. 9:4-10.)

### B.     Magistrate Judge Hearing

On November 27, 2013, the parties appeared for a hearing before the Magistrate Judge. (Minutes, Nov. 27, 2013, Docket No. 51.) The Magistrate Judge began by denying Jaunich's request for an evidentiary hearing with respect to the motion to dismiss the indictment, explaining that all of the issues presented by the motion could be resolved by resort to documents in the public record and that any testimony offered by Jaunich and Hopeman would not entitle Jaunich to relief in light of those documents. (Tr. 3:1-23.) The Magistrate Judge also noted that there had been no showing "that there [are], in fact, contested issues of fact" and that Jaunich had therefore failed to demonstrate entitlement to an evidentiary hearing. (Tr. 3:24-4:22.) The Magistrate Judge similarly denied the request for an evidentiary hearing with respect to the motion to suppress statements explaining that Jaunich had failed "to identify a statement by the defendant that is subject

to suppression and a reasonable statement of the grounds for that suppression" and therefore had no right to an evidentiary hearing.  (Tr. 5:7-25.)

After the Magistrate Judge announced his ruling regarding the evidentiary hearing, defense counsel asked for "permission to submit a written offer of proof as to what the witnesses would testify to."  (Tr. 6:8-11.)  The Magistrate Judge denied the request, noting that Jaunich had failed to provide such offers in either his original or supplemental briefs and that the pretrial motions raised issues that rested upon an interpretation of the four corners of the 2008 Plea Agreement, suggesting that any testimony regarding Jaunich's or Hopeman's understanding of the scope of that agreement would be irrelevant to disposition of the motion.  (Tr. 6:12-7:3.)

At the close of the hearing, the Magistrate Judge gave the parties permission to file supplemental briefs "on the substance of the motion to dismiss on the record that's in front of the Court."  (Tr. 27:8-16.)  The Magistrate Judge noted that the supplemental brief should not "address[] the need for an evidentiary hearing."  (Tr. 27:8-19.)  Neither party filed a supplemental brief following the hearing.

## III.    REPORT AND RECOMMENDATION

On January 8, 2014, the Magistrate Judge issued an R&R recommending that the Court deny Jaunich's motions.  (R&R, Jan. 8, 2014, Docket No. 56.)  With respect to the evidentiary hearing, the Magistrate Judge reiterated his position taken at the hearing that "Defendant failed to proffer sufficient grounds for the testimony, and failed by his proffer to demonstrate disputed facts which, if allowed to explore at the evidentiary hearing,

would further support his Motion to Dismiss or Motion to Suppress Statements." (*Id.* at 3-4.)   The Magistrate Judge also noted that the facts identified by Jaunich in his supplemental brief were not actually facts but "merely legal conclusions not requiring additional evidentiary exploration beyond the documents already contained in the record for the Court's consideration." (*Id.* at 4.)   The R&R did not rule on the waiver issues raised by Jaunich in his supplemental brief and did not discuss why those issues were not addressed.

With respect to the substance of Jaunich's motion to dismiss the indictment the Magistrate Judge concluded that the present indictment did not violate the 2008 Plea Agreement because none of the present charges were the subject of the 2008 Plea Agreement or the 2007 Indictment.   (*Id.* at 8.)   The Magistrate Judge noted that any subjective belief held by Jaunich that the 2008 Plea Agreement was intended to punish him for the criminal operation of all of his businesses was irrelevant in light of the 2008 Plea Agreement's integration clause.   (*Id.*)   The Magistrate Judge concluded that Jaunich's argument regarding double jeopardy was similarly unavailing and that any comments made by the United States at Jaunich's 2008 sentencing about his business dealings not contained in the 2008 Plea Agreement were insufficient, as a matter of law, to trigger double jeopardy protections.   (*Id.* at 10-11.)   The Magistrate Judge also determined that the indictment was not untimely because it alleged acts occurring in 2008, and whether those acts were properly part of the Averill Project scheme was a question for the jury.   (*Id.* at 12-13.)   As to Jaunich's argument about preindictment delay, the Magistrate Judge found that Jaunich had failed to demonstrate any prejudice he

suffered because of the alleged delay on the part of the United States in bringing the present prosecution, and therefore dismissal was inappropriate. (*Id.* at 13-14.) Finally, the Magistrate Judge concluded there was no authority supporting dismissal of an indictment based upon the Court's supervisory powers or the doctrine of equitable estoppel. (*Id.* at 14.)

The Magistrate Judge also recommended that Jaunich's motion to suppress statements be denied because Jaunich had identified no "specific statements he made while in the custody of law enforcement, which would be the subject of his suppression motion" and the only arguments advanced in support of the motion were identical to those advanced in support of his motion to dismiss the indictment. (*Id.* at 14-15.)

## ANALYSIS

### I.    STANDARD OF REVIEW

A motion to dismiss the indictment and a motion to suppress statements are both dispositive motions. *See United States v. Hemme*, Crim. No. 13-070(4), 2013 WL 6162799, at *2 (D. Minn. Nov. 25, 2013) (motion to dismiss an indictment); *United States v. Morris*, Crim. No. 12-26(6), 2012 WL 6194402, at *1 (D. Minn. Dec. 12, 2012) (motion to suppress). Upon the filing of a report and recommendation by a magistrate judge, with respect to such motions, a party may "file and serve specific written objections to a magistrate judge's proposed findings and recommendations." D. Minn. LR 72.2(b)(1); *see also* 28 U.S.C. § 636(b)(1). The Court reviews *de novo* "any part of the magistrate judge's disposition that has been properly objected to," and "may accept,

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  D. Minn. LR 72.2(b)(3); *see also* 28 U.S.C. § 636(b)(1).

## II.   EVIDENTIARY HEARING

### A.   Standard for Holding Evidentiary Hearings

Jaunich objects to the Magistrate Judge's determination that he was not entitled to an evidentiary hearing.  "The baseline rule is that a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion."  *United States v. Connolly*, 504 F.3d 206, 219 (1st Cir. 2007) (internal quotation marks omitted); *see also United States v. Fazio*, 487 F.3d 646, 654-55 (8th Cir. 2007) (concluding that the district court did not abuse its discretion in denying an evidentiary hearing where defendant's allegations regard a motion to dismiss the indictment were too speculative).  "An evidentiary hearing on a motion need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of fact exist."  *United States v. McMullin*, 511 F. Supp. 2d 970, 974 (N.D. Iowa 2007) (citing *United States v. Mims*, 812 F.2d 1068, 1073-74 (8th Cir. 1987)).  To obtain an evidentiary hearing on a motion to dismiss an indictment, a defendant "must present some evidence that tends to show the existence" of a meritorious reason for dismissal.  *United States v. Peterson*, 652 F.3d 979, 982 (8th Cir. 2011) (internal quotation marks omitted).  Similarly, "[a] district court presented with a motion to suppress need not hold an evidentiary hearing as a matter of course, and a hearing is

unnecessary if the district court can determine that suppression is unwarranted as a matter of law." *United States v. Yielding*, 657 F.3d 688, 705 (8th Cir. 2011).

### B.     Breach of Plea Agreement and Violation of Double Jeopardy

#### 1.     Entitlement to Evidentiary Hearing

Jaunich does not seriously dispute that, with respect to his motion to dismiss the indictment based on breach of the 2008 Plea Agreement and violation of double jeopardy, he has failed to meet his burden of demonstrating facts in dispute sufficient to entitle him to an evidentiary hearing. The only "facts" identified by Jaunich before the Magistrate Judge and the Court in support of his request are the five contentions that appeared in his supplemental brief related to the scope of the 2008 Plea Agreement. (*See* Def.'s Supplemental Mem. in Supp. of Mots. to Dismiss Indictment and Suppress Statements at 3-4.) To the extent these contentions contain facts, they are facts that were already in the record before the Magistrate Judge, and therefore did not provide support for an evidentiary hearing. *See Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (holding that it was not abuse of discretion for a district court to rule without an evidentiary hearing "because the record included all of the information necessary for the court to rule on the motion"). For example, Jaunich's contention that "[o]n July 1, 2008, Mr. Jaunich entered into a plea agreement to resolve all matters between the federal government and himself and the NAE-related entities," is an issue that can be resolved by examining the 2007 Indictment, the 2008 Plea Agreement, and the transcript of the

change of plea hearing – all documents that were part of the record before the Magistrate Judge.

To the extent Jaunich's contentions allege that the 2008 Plea Agreement resolved all matters between the federal government and him and encompassed the conduct alleged in the second indictment, these are nothing more than legal conclusions which do not demonstrate entitlement to an evidentiary hearing. *See Mims*, 812 F.2d at 1073-74 (holding that an evidentiary hearing need only be held "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that **contested issues of fact**" exist that bear on the merits of the motion (emphasis added) (internal quotation marks omitted)). Here, to demonstrate entitlement to an evidentiary hearing, Jaunich needed to demonstrate to the Magistrate Judge that there were facts that he could present that, if found to be true, would establish his contentions and entitle him to relief, rather than merely asserting that the 2008 Plea Agreement resolved all matters between the federal government and himself. *See United States v. Starks*, 193 F.R.D. 624, 627 n.3 (D. Minn. 2000) ("The defendant must allege facts that, if proven, would entitle him to relief.").

Finally, at most Jaunich's contentions suggest that he would present testimony at an evidentiary hearing regarding his own subjective understanding of what he thought the 2008 Plea Agreement encompassed, but Jaunich has raised no objections to the Magistrate Judge's determination that the issues of breach of the plea agreement and double jeopardy are controlled by the language of the 2007 Indictment, the 2008 Plea Agreement, and the present indictment. Consequently, this testimony, even if true, would

not entitle Jaunich to dismissal of the indictment. *See United States v. Leach*, 562 F.3d 930, 936-37 (8th Cir. 2009) (finding no breach of a plea agreement where defendant's theory of breach was based upon a possible oral promise that was not contained in the written plea agreement). Therefore, the Court concludes that Jaunich failed to present sufficient facts demonstrating entitlement to an evidentiary hearing.[2]

### 2.   Waiver

Jaunich's primary contention in his objections is that he was not required to make the requisite showing of entitlement to an evidentiary hearing because by providing information about the expected testimony of Hopeman and himself, he may have waived attorney-client privilege. Additionally, Jaunich argues that he declined to proffer the content of the testimony he intended to offer at an evidentiary hearing because he wanted assurances that any testimony could not later be used against him at trial before going forward with the evidentiary hearing. For this reason, Jaunich objects to the Magistrate

---

[2] Jaunich also objects to the Magistrate Judge's refusal to allow Jaunich to submit a written offer of proof after the hearing on the pretrial motions. Jaunich, however, provides no reason to excuse his failure to provide such an offer of proof in either his original or supplemental brief. Nor has Jaunich pointed to any authority to support the proposition that the Magistrate Judge was required to allow him unlimited opportunities to supplement the record. Finally, as discussed below, Jaunich argues in his objections that he would not have provided an offer of proof prior to a ruling on waiver issues. Therefore Jaunich's contention that he would have submitted an offer of proof after the Magistrate Judge's hearing if given another opportunity to establish entitlement to an evidentiary hearing does not appear to be particularly genuine. This conclusion is further supported by the fact that in his present objections Jaunich argues that "Mr. Jaunich cannot provide affidavits from Mr. Hopeman or himself as to what their testimony would have been without risking completely waiving his attorney-client privilege and his Fifth Amendment rights." (Def.'s Objections at 6 n.4, Jan. 16, 2014, Docket No. 61.) Because Jaunich contends that he would have not taken advantage of an opportunity to submit a written offer of proof even if offered, the Court finds that the Magistrate Judge did not err in refusing to allow such a submission.

Judge's refusal to rule on the scope of any potential waiver and permissible derivative uses of testimony offered at the evidentiary hearing.

As an initial matter, Jaunich has provided no authority, and the Court has found none, to support the proposition that a defendant is exempted from making a showing necessary to justify an evidentiary hearing when that evidentiary hearing potentially implicates privilege, waiver, or derivative use issues. Jaunich appears to argue that any time a defendant expresses a concern that testimony at a pretrial hearing might waive a privilege or contain evidence that could be used in a later trial the defendant is under no obligation to apprise the court of the nature of the evidence he intends to present, and is instead absolutely entitled to an evidentiary hearing. Jaunich's interpretation of entitlement to an evidentiary hearing is at odds with the well-established precedent that a defendant must allege facts with sufficient definiteness, clarity, and specificity to allow the court to determine whether contested issues of fact bearing on the requested relief exist in order to demonstrate that an evidentiary hearing is warranted. Indeed, it is difficult to imagine a case in which a defendant – without having provided any information to the court regarding the subject of his evidentiary hearing – would be **unable** to claim that he was concerned about use at trial of the evidence presented at the pretrial hearing, and thereby bypass the requirement to present facts to the court supporting the request for an evidentiary hearing.

Additionally, Jaunich has provided no authority for the proposition that the Magistrate Judge was required to rule on any issues related to waiver of attorney-client privilege prior to an evidentiary hearing. Nor has Jaunich demonstrated that such a ruling

would have been possible. Whether attorney-client privilege is implicated or waived by testimony is a determination that depends entirely on the nature of the information disclosed. For example, a defendant waives attorney-client privilege if he voluntarily testifies about communications with his attorney. *See United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009). This wavier "extends to 'any information directly related to that which was actually disclosed.'" *Id.* (quoting *United State v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998)). But attorney-client privilege is not implicated at all if a defendant testifies about only what his attorney said to the prosecutor during plea negotiations. *Id.*

Here, Jaunich provided the Magistrate Judge with no information regarding the proposed content of his or Hopeman's testimony. Therefore it would have been impossible for the Magistrate Judge to determine whether any of that testimony was protected by attorney-client privilege and therefore whether any testimony would waive the privilege. If Jaunich and Hopeman had confined their testimony, for example, to the content of discussions they had with the prosecutor, attorney-client privilege would have been inapplicable. Additionally, to the extent any testimony would have involved privileged communications, the Magistrate Judge lacked sufficient – or indeed any – information about the scope of that testimony to make a ruling with regard to waiver. Because waiver depends upon the communications to which Jaunich and Hopeman testified, the Magistrate Judge would not have been able, in the abstract, to determine the scope of wavier caused by their testimony. *See United States v. McCabe*, Crim. No. 12-8135, 2013 WL 451829, at *3 (D. Ariz. Feb. 6, 2013) ("[T]he court questions whether it

could possibly decide whether a waiver [of attorney-client privilege] would occur during an evidentiary hearing in advance of such hearing taking place.").   Although Jaunich indicates that a preemptive ruling would have been possible based on his request that the Magistrate Judge issue a ruling limiting any wavier to the contents of Jaunich's and Hopeman's direct examination and "not require disclosure of any documents in the possession of Mr. Jaunich's prior or present counsel" (Def.'s Supplemental Mem. in Supp. of Mots. to Dismiss Indictment and Suppress Statements at 12), such an order would have been contrary to Eighth Circuit law providing that waiver extends to any information directly related to the disclosed information.  *See Davis*, 583 F.3d at 1090.[3] Therefore, the Magistrate Judge would have been unable to arbitrarily limit waiver to direct testimony without extending the waiver to directly related information.   Because Jaunich failed to provide the Magistrate Judge with any information relevant to the waiver inquiry, the Magistrate Judge properly refused to rule on the issue.

With respect to Jaunich's request that the Magistrate Judge also rule, prior to the evidentiary hearing, on the permissible uses of testimony given by him at the hearing, the Court similarly finds that the Magistrate Judge lacked the necessary information to make

---

[3] Jaunich cites to *United States v. Collyard*, Crim. No. 12-58, 2013 WL 1346202 (D. Minn. Apr. 3, 2013), as support for the proposition that he is entitled to a determination of attorney-client privilege and wavier as well as the entry of a protective order prior to the evidentiary hearing.  But in *Collyard* the defendant submitted an affidavit containing evidence that was the basis for his motion to withdraw his guilty plea, identified the documents over which he claimed attorney-client privilege, and provided them to the court for in camera review, before the court ruled on his motion for a protective order related to the evidentiary hearing on his motion to withdraw.  *Id.* at *1; (*see also* Crim. No. 12-58, Mem. Op. & Order, Jan. 8, 2013, Docket No. 38).  Accordingly, *Collyard* does not support Jaunich's claim that he is entitled to a protective order in the abstract based on testimony, the content of which was unknown to the Magistrate Judge.

such a ruling.  Jaunich argues that the United States should have been prevented from using any testimony given by him at an evidentiary hearing because such use would have violated his Fifth Amendment right against self-incrimination and his attorney-client privilege.  Cases examining this issue demonstrate, however, that the admissibility of pretrial testimony at trial, like the question of attorney-client privilege waiver, is dependent upon the nature of the testimony given during the pretrial proceeding and the purpose for which it is offered at trial.  *See, e.g.*, *United States v. Simmons*, 390 U.S. 377, 394 (1968) (finding that a defendant's pretrial testimony could not be used against him at trial "on the issue of guilt unless he makes no objection"); *United States v. Rosalez*, 711 F.3d 1194, 1214 (10th Cir. 2013) (upholding admission of the defendant's pretrial testimony at trial because defendant "did not have to make any incriminating statements at the suppression hearing in this case in order to properly assert his Fourth Amendment challenge to the government's evidence"); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1290-91 (9th Cir. 1994) (holding that a defendant's testimony at an evidentiary hearing could be used for impeachment purposes at trial).  Accordingly, contrary to Jaunich's request of the Magistrate Judge, courts make determinations of admissibility only **after** the pretrial hearing has occurred.  *See, e.g.*, *United States v. Kahn*, 309 F. Supp. 2d 789, 798 (E.D. Va. 2004) (noting that defendant "sought to suppress **at trial**" testimony given during the pretrial hearing (emphasis added)).

At the time Jaunich sought a ruling regarding derivative uses of his pretrial testimony the Magistrate Judge was unaware of what type of testimony Jaunich would provide – for example, whether he would make any incriminating statements or testify as

to any matters covered by attorney-client privilege.   Furthermore, a preliminary ruling would have been inappropriate, because any future use of his pretrial testimony would depend upon the purpose for which it was sought to be introduced at trial.  *See Simmons*, 390 U.S. at 394; *Beltran-Gutierrez*, 19 F.3d at 1290-91; *cf. United States v. Barletta*, 492 F. Supp. 910, 913 (D. Mass. 1980) ("[R]equesting this court to make a ruling on admissibility contingent on the government satisfying its offer of proof is little less than asking for an advisory opinion based on a hypothetical set of facts not yet established by evidence presented before a jury.  No trial court should be compelled to undertake such an academic exercise.").

Finally, Jaunich appears to argue that, even in light of the uncertainty regarding the scope of the evidentiary hearing, an advance ruling on waiver and derivative uses of his testimony was required because it was necessary to enable him to make an informed decision about whether to offer pretrial testimony.   The Court finds this argument unavailing because district courts are not required to provide advance rulings on issues of admissibility.  *Cf. United States v. Masters*, 840 F.2d 587, 590 (8th Cir. 1988) ("[I]t is not an abuse of discretion for a district court to refuse to rule on a motion in limine, even if that refusal inhibits a defendant from testifying on his own behalf."); *United States v. Witschner*, 624 F.2d 840, 844 (8th Cir. 1980) ("The district court was understandably reluctant to rule on the allowable scope of impeachment without first hearing the defendant's testimony on direct examination . . . .   Neither the fifth and sixth amendments nor the Federal Rules of Evidence impress upon a trial court a duty to aid the defendant in formulating his trial strategy regarding the risks of impeachment should he decide to

take the stand."). Therefore, the Court concludes that the Magistrate Judge properly refused to rule on the waiver issues raised by Jaunich in connection with his pretrial motions.[4]

## C.     Preindictment Delay

Jaunich also objects to the Magistrate Judge's determination that an evidentiary hearing regarding preindictment delay, in the form of testimony from Julie Jaunich, was unnecessary. As with the proposed testimony of Jaunich and Hopeman, Jaunich failed to allege any facts to which Julie Jaunich would testify that could entitle him to relief. Jaunich did not discuss Julie Jaunich's proposed testimony in either his original or supplemental brief in support of his pretrial motions. At the hearing before the Magistrate Judge, defense counsel stated only that Julie Jaunich would testify "as to some of those issues in the motion to dismiss the indictment. And specifically, Your Honor, she was going to offer some testimony as to the notion of pre-accusation delay." (Tr. 7:16-20.) As explained above, such a showing is insufficient to demonstrate entitlement to an evidentiary hearing because Jaunich did not provide the Magistrate Judge with allegations of sufficient definiteness, clarify, or specificity for him to

---

[4] In his objections, Jaunich requests that even if the Court denies his motion to dismiss the indictment and motion to suppress statements that the Court "issue a ruling on the scope of the waiver on Mr. Hopeman's trial testimony and what disclosures from his file should be made to the government before he testifies at trial." (Def.'s Objections at 7.) For the reasons explained above regarding why the Magistrate Judge was neither able nor required to rule on the waiver issues raised by Jaunich, the Court will similarly decline to rule in the abstract on these issues. Jaunich is not prejudiced from raising such issues in an appropriate fashion either in motions in limine or at trial. Should Jaunich seek a ruling in advance of trial, the Court cautions that he must provide sufficient information regarding the scope of any proposed testimony or privileged documents to allow the Court to make the requisite determinations of privilege and waiver.

determine whether a contested issue of fact existed that required an evidentiary hearing. Therefore, the Magistrate Judge did not err in denying an evidentiary hearing on the issue of preindictment delay.

But Jaunich has now submitted an affidavit of Julie Jaunich in support of his present objections.  In the affidavit, Julie Jaunich indicated that if she had been permitted to testify at an evidentiary hearing she would have testified that sixty boxes of Jaunich's business records – including records related to the Averill Project – were stolen from his office while he was serving his prison sentence.  (Aff. of Julie Jaunich, Jan. 16, 2014, Docket No. 62.)  Jaunich argues that this testimony would have supported dismissal of the indictment because due to the loss of evidence related to the Averill Project he was prejudiced by the United States' delay in prosecuting him for the present offenses. (Def.'s Objections at 6.)

Although the Court has discretion to "consider evidence presented for the first time in a party's objection to the magistrate judge's recommendation" it is under no obligation "to accept new evidence."  *United States v. Hathaway*, Civ. No. 03-245, 2004 WL 234399, at *4-*5 (D. Minn. Jan. 23, 2004).  Where a defendant fails to provide factual information in support of a motion and a magistrate judge refuses to hold an evidentiary hearing based on that failure, a district court properly refuses to consider supplemental evidence raised in objections if the evidence "was available to the defense well before the proceedings before the magistrate judge."  *Id.* at *5 (citing *United States v. Howell*, 231 F.3d 615, 623 (9th Cir. 2000)).

Here, Jaunich has made no argument that the statements in Julie Jaunich's affidavit were unavailable at the time of the Magistrate Judge's hearing on the pretrial motions. Jaunich had an opportunity in his original and supplemental briefs as well as at oral argument before the Magistrate Judge to provide the factual basis of Julie Jaunich's testimony and failed to do so. Accordingly, the Court will decline to consider this "new" evidence raised for the first time in Jaunich's objections, and concludes that an evidentiary hearing was not warranted on the issue of preindictment delay.[5]

Because the Magistrate Judge did not err in refusing to rule on waiver issues or in denying Jaunich an evidentiary hearing, the Court will adopt the R&R in its entirety.[6] Accordingly, the Court will deny Jaunich's motion to dismiss the indictment and motion to suppress statements.

---

[5] The Court also notes that even if it were to consider the substance of Julie Jaunich's affidavit, it is unlikely the affidavit would be sufficient to demonstrate entitlement to an evidentiary hearing because it says nothing about how any theft of Jaunich's business records has prejudiced him. *See McMullin*, 511 F. Supp. 2d at 975 ("The allegations of prejudice must be specific, concrete and supported by the evidence – vague, speculative or conclusory allegations will not suffice." (citing *United States v. Gladney*, 474 F.3d 1027, 1031 (8th Cir. 2007)).

[6] The objections relating to the Magistrate Judge's refusal to rule on waiver issues and determination that Jaunich was not entitled to an evidentiary hearing are the only specific objections to the R&R made by Jaunich, which the Court subjected to *de novo* review. Although Jaunich also objected generally "to the recommendations that his Motion to Dismiss the Indictment and his Motion to Suppress Statements should be denied" (Def.'s Objections at 1 (citations omitted)), such general objections are insufficient to invoke a *de novo* standard of review. *See Reed v. Curry Concrete Constr. Inc.*, Civ. No. 10-4329, 2011 WL 2015217, at *2 (D. Minn. May 23, 2011) ("[W]hen a party is simply unhappy with the results and does not cite any reason why the Magistrate Judge's determination was incorrect, nor any basis for this Court to reach a different outcome, the Court may review the Magistrate Judge's recommendations as if no objections were filed." (alterations and internal quotation marks omitted)). The Court has independently reviewed the record and the R&R. Having determined that the Magistrate Judge did not err in recommending denial of Jaunich's pretrial motions, the Court will adopt those recommendations.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the

Court **OVERRULES** Defendant's objections [Docket No. 61] and **ADOPTS** the Report

and Recommendation of the Magistrate Judge [Docket No. 56].   Accordingly, **IT IS**

**HEREBY ORDERED** that:

1.    Defendant's Motion to Dismiss the Indictment [Docket No. 30] is

**DENIED**.

2.    Defendant's Motion to Suppress Statements [Docket No. 31] is **DENIED**.


DATED:  March 14, 2014                        ____s/ _John H. Tunheim____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                      United States District Judge